IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Inheritance Funding Company, Inc., | C/A No. 3:12-cv-1308-JFA |
| Plaintiff, | |
| vs. | **ORDER ON MOTION** |
| | **FOR SUMMARY JUDGMENT** |
| Darial Chatman, et al, | |
| Defendants. | |

## I.  INTRODUCTION

This matter is before the court on Defendant David Wirth's Motion for Summary Judgment (ECF No. 40).  In its Complaint (ECF No. 1), Plaintiff Inheritance Funding Company, Inc. alleges four causes of action against Mr. Wirth: Constructive Fraud, Negligent Misrepresentation, Civil Conspiracy, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  For the reasons that follow, this court grants Defendant Wirth's Motion for Summary Judgment.

## II.  FACTS AND PROCEDURAL HISTORY

The events leading up to this suit arise from the death of Brenda Elaine Chatman, who passed away on September 2, 2009, and was survived by her three adult children – Darial, Calvin, and Kimberly.  Pl.'s Mem. Opp'n. Summ. J. at 3 (ECF No. 43) (hereinafter "Pl.'s Opp'n").  On October 5, 2009, Darial Chatman applied to open an estate with the Richland County Probate Court.  *Id*.  Darial was subsequently appointed the estate's Personal Representative.  *Id*.  On October 23, 2009, Darial, with the assistance of his retained counsel James Shadd, filed a sworn

Inventory and Appraisement with the probate court attesting to the existence of a brokerage account, banking accounts, certificates of deposit, as well as real property all belonging to Brenda Chatman, and altogether comprising an asset value of $2,985,072.29. *Id*. The document was fraudulent; in reality, Brenda Chatman had no such assets. *Id*. Darial created fake receipts and bank records to show that he had liquidated the assets in question. *Id*. at 6.

On October 26, 2009, Kimberly Chatman contacted Plaintiff Inheritance Funding Company ("IFC") to apply for a net advance of $200,000.00. *Id*. at 6. IFC subsequently contacted Shadd to confirm Kimberly's heirship, and Shadd verified to IFC that Kimberly was set to receive one-third of the estate. *Id*. at 7. Shadd also advised IFC that the estate assets had been consolidated into a single CD, and agreed to have Darial send a copy of the CD receipt to IFC as a precondition for the advance to Kimberly. *Id*. Darial did so on November 5, 2009. *Id*. Relying on the documentation provided by Darial, as well as the assurances of Shadd, IFC wired a total of $200,010.00 in three separate transfers to Kimberly's account at Palmetto Health Credit Union. *Id*. at 6-7. These funds were later transferred to accounts controlled by Darial. *Id*.

In November, 2009, IFC was contacted by Calvin Chatman. *Id*. Following a similar procedure as before, IFC advanced to Calvin a sum of $250,036.00. *Id*. The amount was wired directly to an account controlled by Darial. *Id*. Another wire transfer was made to Kimberly in December in the amount of $50,036.00. *Id*. In total, the amounts wired to Kimberly and Calvin amounted to $500,082.00. *Id*. at 8.

On December 1, 2009, the probate court issued a notice requiring all heirs to attend a status hearing. *Id*. In anticipation of the hearing, Judge McCullough contacted James Shadd to direct an accounting of the estate funds, requiring the involvement of a CPA in an effort to

establish a record of all relevant transactions. *Id.* at 8-9. Pursuant to that conversation, Darial engaged movant David Wirth to assist him in complying with the court's directives. *Id.* at 10.

Relying on documentation entirely provided by Darial, Wirth composed a letter accounting for the estate funds. *Id.* While Wirth did no independent verification of the estate information, he did include in the letter that the financial transactions at issue were "as indicated by Darial D. Chatman." *See* Pl.'s Exh. 17 (ECF No. 43-1). Wirth did not otherwise specify the scope of his representation of Darial in the letter, nor did he provide any additional disclaimers. *See id.*

At the probate hearing, the Wirth letter and falsified bank records were provided to the judge, and together were apparently sufficient to satisfy her of the status of the estate. *See* Pl.'s Opp'n at 11-12. After the hearing, IFC contacted Shadd, who assured IFC of the satisfactory disposition, but did not mention the Wirth letter. *Id.* at 11-12. IFC claims that it relied on this assurance, as well as the results of the hearing, "to justify Darial's continued administration of the estate, thus allowing Darial to successfully covering [sic] up the fraudulent scheme until September when all the advanced funds by IFC were lost." *Id.* at 3. They allege that the Wirth letter played a central role in the cover-up of the fraud. *See generally id.*

### III. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Maryland Community College*, 955 F.2d 924, 928 (4th Cir.

1992).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

### A.  Constructive Fraud

Under South Carolina law, "to prove constructive fraud, all elements of actual fraud except the element of intent must be established."  *Richland County v. Carolina Chloride, Inc.*, 382 S.C. 634, 645, 677 S.E.2d 892 (Ct. App. 2008), *rev'd on other grounds* 394 S.C. 154 (S.C. 2011) (citing *Armstrong v. Collins*, 366 S.C. 204, 219, 621 S.E.2d 368, 375 (Ct. App. 2005)).  To establish fraud, "the following elements must be demonstrated 'by clear, cogent and convincing evidence: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity of a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.'"  *Id*. (quoting *Schnellmann v. Roettger*, 373 S.C. 379, 382, 645 S.E.2d 239, 241 (2007)).  However, in a constructive fraud case, where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely. *Armstrong*, *supra*, at 219.  This restriction "is especially true in circumstances where one should have utilized precaution and protection to safeguard his interests."  *Id*.

In his Motion for Summary Judgment, Defendant Wirth asserts a lack of reliance—actual or justifiable—on the part of IFC, as well as a lack of proximate injury resulting from the Wirth letter.  *See generally* Def.'s Mem. Supp. Summ. J. (hereinafter "Def's Mem.").  Given the facts at hand, both of these arguments are meritorious.  Although Plaintiffs rightly point out that reasonableness of reliance is a factual question for the jury, *see* Pl.'s Opp'n. at 17, here there was no confidential or fiduciary relationship between Wirth and IFC that would give rise to a right of reliance in the first place.

Accordingly, the cases upon which Plaintiffs rely are distinguishable from the facts at hand. *Unlimited Services, Inc. v. Macklen Enterprises, Inc.*, 303 S.C. 384, 401 S.E.2d 153 (S.C. 1991) involved a landlord-tenant dispute. *Starkey v. Bell*, 281 S.C. 308, 315 S.E.2d 153 (Ct. App. 1984), involved the purchaser and seller of a restaurant. Based upon the undisputed facts, there was no direct or agency relationship between Defendant Wirth and Plaintiff IFC. Moreover, Plaintiff never reviewed the Wirth letter until September, 2010 – ten months after the last advance was made to the Chatmans. Thus, that IFC relied on representations made therein is a fundamentally flawed proposition.

Further, as Wirth points out, "one cannot rely on misstatements of facts if the truth is easily within reach," *see* Def.'s Mem. at 27 (citing *Flowers v. Price*, 3 S.E.2d 38, 39 (S.C. 1939)). This proposition is well-established as the law in South Carolina. *See, e.g.*, *Armstrong*, *supra*, 621 S.E.2d at 375 (citing *King v. Oxford*, 282 S.C. 307, 312, 318 S.E.2d 125, 128 (Ct. App.1984)); *see also West v. Gladney*, 341 S.C. 127, 533 S.E.2d 334 (Ct. App. 2000). Bearing in mind the nature of IFC's business, it is reasonable to expect that it should utilize caution in advancing funds to those they have never met, based on representations made over the phone. The Wirth letter, well within the Plaintiff's reach, was not reviewed until months after the probate hearing. Had IFC exercised a higher degree of due diligence, the letter's basis would likely have been apparent.

Regarding proximate cause, IFC does not allege that the Wirth letter induced it to make the loans, but rather contends that the existence of the letter delayed discovery of Darial Chatman's fraud after the fact. *See generally* Pl.'s Opp'n. Typically, to prove proximate cause in South Carolina, a Plaintiff must establish: (1) causation in fact; and (2) legal cause. *Whitlaw v. Kroger Co.*, 306 S.C. 51, 410 S.E. 2d 251 (S.C. 1991). Causation in fact requires proof that the injury never would have occurred 'but for' the defendant's action. Legal cause, meanwhile, pertains to foreseeability. A plaintiff "proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence." *Id*. at 54. In the case at hand, the undisputed facts do not establish proximate cause sufficient to establish Wirth's liability. Clearly, the injury would have happened with or without the existence of the Wirth letter. And while some of the funds were recoverable at the time of the probate

hearing, roughly 80% had already been spent.  Def.'s Mem. at 20.  By the time IFC actually reviewed the Wirth letter in September 2010, Darial's Regions Bank account had a balance of negative $1,566.83.  *Id*. The money was gone.

For the foregoing reasons, summary judgment is hereby GRANTED on the constructive fraud claim.

## B.  Negligent Misrepresentation

To make a case for negligent misrepresentation, a party "must show by a preponderance of the evidence: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached the duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation."  *Turner v. Milliman*, 392 S.C. 116, 708 S.E.2d 766 (S.C. 2011).  Although several of these elements are in doubt, Defendant Wirth focuses his argument on the allegation that IFC could not have justifiably relied on the letter in question.

"A determination of justifiable reliance involves the evaluation of the totality of the circumstances, which includes the positions and relations of the parties."  *Gladney*, *supra*, 533 S.E.2d at 337 (S.C. 2000).  The totality of the circumstances weighs against a finding of justifiable reliance in this instance.  Again, IFC did not review the Wirth letter until September, 2010.  Had it done so at an earlier date, it is doubtful that IFC would have been inclined to rely on the summary statements based on documentation provided by Darial Chatman.  Moreover, as Wirth argues, it is simply unjustifiable to rely on a letter that was not seen at the time of the hearing and whose author was unknown.  *See* Def.'s Opp'n at 2.

In response, IFC invokes the concept of "indirect reliance," citing the case of *ML-Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 320 S.C. 143, 463 S.E.2d 618 (Ct. App. 1994).  *See* Pl.'s Opp'n. at 18-19.  In *ML-Lee*, the Court recognized that an accountant may have a duty to a third party under a

negligent misrepresentation cause of action. *See generally ML-Lee*, *supra*. Again, this case is distinguishable from the facts at hand. *ML-Lee* involved an agency relationship between an investor and an investment advisor. Because the accountant's misinformation was provided to the investment advisor, the court found that the information was relied upon indirectly by the investor. Here, there is no such agency relationship. Furthermore, *ML-Lee* involved the use of audited financials, rather than a cursory summation of banking records. Wirth was not asked to conduct an audit, and never purported to have done so. His letter was a mere accounting of records that originated from Darial Chatman.

There is some question as to whether Mr. Wirth complied with the relevant standards applicable to accountants. IFC provides an affidavit from Ronald Burkett, CPA, who asserts that the Wirth letter did not conform to the professional standards set forth in the American Institute of Certified Public Accountant's Statement on Standards for Accounting and Review Services. *See generally* Burkett Aff. (ECF No. 43-2). Based on this evidence, it seems clear that Wirth could have and perhaps should have more effectively disclaimed his services to indicate that he had not audited or reviewed the financials in question. Nonetheless, because of the highly attenuated nature of reliance in this instance, as well as the questionable fulfillment of several of the other required prongs, this is not a determinative factor.

For the above reasons, summary judgment is hereby GRANTED on the negligent misrepresentation claim.

## C. Civil Conspiracy

A civil conspiracy exists where there is (1) a combination of two or more persons; (2) for the purposes of injuring the plaintiff; (3) which causes special damages. *Pye v. Estate of Fox*, 369 S.C. 555 (S.C. 2006). "The 'essential consideration' in civil conspiracy 'is not whether lawful or unlawful acts or means are employed to further the conspiracy, but whether the primary purpose or object of the combination is to injure the plaintiff.'" *Id.* (quoting *Lee v. Chesterfield General Hosp., Inc.*, 289 S.C. 6, 13, 344 S.E.2d 379, 383 (Ct. App. 1986). This calculus necessarily includes an element of intent, clearly

lacking here.  The facts provide absolutely no evidence of an agreement between Wirth and Darial Chatman to injure Plaintiff IFC.

Moreover, as the parties recognize, "[i]f a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (Ct. App. 2009).  Defendant Wirth contends that IFC re-alleges the same damages as those in the constructive fraud and negligent misrepresentation claims.  *See* Def.'s Mem. at 31-32.  In response, IFC asserts that Wirth aided and abetted Darial's breach of fiduciary duty owed to IFC, an additional act which they argue is "not foreclosed" by the 'special damage' rule for civil conspiracy.  *See* Pl.'s Opp'n. at 23-24 (citing *Future Group II v. Nationsbank*, 324 S.C. 89, 478 S.E.2d 45 (1996)).  This appears to be little more than an attempt to obfuscate the issue.  Because there is no evidence of civil conspiracy, special damages are moot.  Further, it is unlikely that Defendant's conduct rises to the level of aiding and abetting a breach of fiduciary duty, which requires a "knowing participation in the breach." *Future Group II* at 99.  Under the facts as stated by IFC, Wirth knew the letter had been requested by the estate's attorney, but little else.

For the above reasons, summary judgment is hereby GRANTED on the civil conspiracy claim.


D. <u>RICO</u>

IFC asserts a civil RICO claim against all of the Defendants pursuant to 18 U.S.C. § 1962.  IFC does not allege any unique claims against Wirth, but rather asserts that "Wirth participated in one or more activities in furtherance of and to facilitate the [Chatman's] fraudulent scheme."  Compl. at 22 (ECF No. 1).  Despite the uncontested fact that Wirth did not utilize the telephone, mails or wire in furtherance of the alleged fraud, IFC asserts that a "defendant may be liable for RICO conspiracy where he knows the general nature of the conspiracy and takes action to further the goal of the conspiracy even when the conspiracy

8

extends beyond his individual role."  Pl.s Opp'n. at 24 (citing *United States v. Zichettello*, 208 F.3d 72, 99 (2d. Cir. 2000)).  Here, however, there is no evidence of any knowledge on Wirth's part, nor of any conspiracy between Wirth and Darial Chatman.

Furthermore, as Wirth points out, there is some question as to whether this type of fraud constitutes the type of "extended, widespread or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties."  Def.'s Mem. at 34.  IFC does not respond to this assertion in its Memorandum in Opposition.

For the above reasons, summary judgment is hereby GRANTED on the civil RICO claim.

## V.  CONCLUSION

Based on the foregoing, this court hereby grants Defendant David Wirth's Motion for Summary Judgment *in toto*.  Viewing the facts and inferences drawn therefrom in the light most favorable to IFC, there are no issues of fact that would give rise to the potential for Mr. Wirth's liability.  Accordingly, all claims against Defendant David Wirth are DISMISSED.

IT IS SO ORDERED.

July 31, 2013                                             Joseph F. Anderson, Jr.
Columbia, South Carolina                      United States District Judge